UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAWN ZIMMERMAN,** *et al.*,

    **Plaintiff,**

v.

    Case No. 2:22-cv-40
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Kimberly A. Jolson

**RUSS STEAMER SERVICE, LLC,** *et al.*,

    **Defendants.**

This matter arises on Defendant Russ Steamer Service, LLC's ("RSS") Motion for Judgment on the Pleadings, or, in the Alternative, Summary Judgment (ECF No. 10) and Defendant Ohio Bureau of Workers' Compensation's ("OBWC") Motion for Realignment (ECF No. 5.) For the reasons stated herein, the Court **GRANTS** RSS' motion (ECF No. 10), and **DENIES** the OBWC's motion (ECF No. 5).

## I. Background

Plaintiff Dawn Zimmerman alleges that she sustained personal injuries as a result of a truck accident that occurred at an RSS-owned truck facility in West Jefferson, Ohio. Taken as true, her allegations, in relevant part, are as follows:

In the Fall of 2019, Ms. Zimmerman worked as a "yard spotter" for RSS. This required her to "drive tractor-trailers, semi-trucks, or spotter vehicles" around a truck yard, as well as "to transfer trailers from one truck to another." (Compl., ECF No. 3 at ¶¶ 19-21.) On October 30, 2019, Ms. Zimmerman reported to an RSS yard in West Jefferson, Ohio "to move various trailers and equipment around." (*Id.* at ¶ 22.) That day, she was assigned to one particular truck: "Unit 1." (*Id.*) When Ms. Zimmerman entered Unit 1, she found the windows to be "very foggy" due to the day's rain. (*Id.* at ¶ 24.) So, she turned the truck's defrosters on. (*Id.* at ¶ 25.) But the defrosters—as Ms.

1

Zimmerman previously reported to RSS' truck mechanic, Defendant Ameri Fleet Solutions, Inc. ("AFS")—did not properly work. (*Id.* at ¶¶ 27, 32.) Thus, as she drove, her "windows began to fog up," impeding her vision. (*Id.* at ¶¶ 33-34.) This ultimately caused her to collide with a pole, causing injuries to her right elbow and hand. (*Id.* at ¶¶ 35-36.)

Ms. Zimmerman and her husband, Dennis Zimmerman, now bring suit against RSS, several other out-of-state companies, and twenty-five unnamed defendants on theories of (1) negligence (Count I); (2) negligence per se (Count II); (3) negligent entrustment, employment, retention, and repair (Count III); (4) loss of consortium and economic loss (Count IV); and (5) negligence and vicarious liability (Count VI). They also bring an action for declaratory judgment against the OBWC (Count V).

RSS, pointing to Ohio's workers compensation immunity statute, now moves for judgment on the pleadings, or, alternatively, summary judgment. (ECF No. 10.) Simultaneously, the OBWC moves to "realign" itself as a named plaintiff in this action. (ECF No. 5.) The Court addresses these matters in turn.

## II.   Standard of Review

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).  To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a).  While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

"A court faced with a 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d)." *Cobb ex rel. Mallardi v. Tenn. Valley Auth.*, 1 F. Aupp. 3d 864, 867 (W.D. Tenn. 2014). At the same time, a court *may* "consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein." *Id.* (citation omitted); *accord Amini v. Oberlin College*, 259 F.3d 493, 503 (6th Cir. 2001).

**III.     RSS' Motion for Judgment on the Pleadings, or, in the Alternative, For Summary Judgment**

RSS contends that its compliance with O.R.C. § 4123.35 immunizes it from the Plaintiffs' claims, all of which arise from Ms. Zimmerman's on-the-job injury. RSS specifically relies on O.R.C. § 4123.74, which, among other things, entitles all "[e]mployers who comply with section 4123.35 of the [Ohio] Revised Code" to immunity from "damages at common law or by statute for any injury . . . received . . . by any employee in the course of or arising out of his employment." O.R.C. § 4123.74. And to prove its compliance with § 4123.35, RSS points to various certificates it received from the OBWC in 2020 and 2021, both of which state that it "participate[d] in the

3

Ohio State Insurance Fund as required by law," and is "[t]herefore . . . entitled to the rights and benefits of the fund for the period specified." (*See* RSS Ex. 1, ECF No. 6-1.)

Plaintiffs do not challenge RSS' general contention that § 4123.74 immunizes it from employment-related injury claims; they simply argue that the statute has no effect here. (Pl.'s Resp., ECF No. 18 at PageID #214.) Underpinning their position are two specific cases: (1) *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), which recognized that § 4123.74 does not protect employers against their employees' intentional tort claims, and (2) *Fyffe v. Jeno's Inc*, 59 Ohio St.3d 115, 570 N.E.2d 1108, 1110 (1991), which held that an employer's tortious conduct is "intentional" when it requires an employee to perform a "dangerous task" that (1) it is knows to be dangerous and (2) is "substantially certain" to cause the employee harm. *See Fyffe v. Jeno's Inc*, 59 Ohio St.3d 115, 570 N.E.2d 1108, 1110 (1991).

Relying on *Fyffe*, Plaintiffs argue that their complaint, on its face, circumvents § 4123.74—namely, due to its allegation that RSS "knowingly" required Ms. Zimmerman to drive Unit 1 after she complained that its defrosters did not work. This argument is flawed on multiple fronts. The first of its shortcomings is straightforward: *Fyffe* is no longer the law in Ohio. As RSS notes, that case was superseded by O.R.C. § 2745.01 seventeen years ago. *See Hoyle v. DTJ Ents., Inc.*, 143 Ohio St.3d 197, 36 N.E.3d 122, ¶ 9 (2015). And as § 2745.01 specifically states:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with *deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.*

4

> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

O.R.C. § 2745.01 (emphasis added).

Plaintiffs concede that Ms. Zimmerman has received benefits for a pre-existing workers' compensation claim (Claim No. 19-205525) related to her injury, which they also admit occurred in her capacity as an RSS employee. (Compl., ECF No. 3 at ¶¶ 5, 19.) That in itself is enough to create an inference that RSS was in "compliance with Ohio's workers' compensation statutes" during the relevant time period. *See Wilson v. Rose Metals Indus., Inc.*, 2021-Ohio-4518, 182 N.E.3d 542, ¶ 23 (8th Dist.) ("An employer can show compliance with Ohio's workers' compensation statutes by . . . showing that the injured employee received workers' compensation benefits.") (emphasis added). Thus, the Court need not even consider the documents RSS offers to find that § 4123.74 applies. The question is whether Plaintiffs' complaint, on its face, plausibly alleges conduct that would exempt RSS from § 4123.74's protection—*i.e.*, an intentional tort. *See Parker v. Ford Motor Co.*, 2019-Ohio-882, 124 N.E.3d 893, ¶¶ 12, 14 (1st Dist.) (affirming trial court's dismissal of plaintiff's negligence claims against employer on immunity grounds).

Unquestionably, it does not. Plaintiffs plainly do not allege that RSS "acted with . . . deliberate intent to injury [Ms. Zimmerman.]" *Id.* at ¶ 14. Nor does their complaint, even when construed favorably, "plausibly" establish that RSS *knew* Unit 1's defrosters were problematic.[1]

---

[1] True, Plaintiffs claim that "[o]n multiple . . . occasions" prior to October 30, 2019, "Mrs. Zimmerman had reported problems with Unit 1, particularly with the defrost function for the front windshield." (Compl., ECF No. 3 at ¶ 26.) But all of these complaints, as alleged, appear to have gone through two *other* parties: (1) Target and (2) Amerit Fleet Solutions, Inc. ("AFS") (*Id.* at ¶¶ 27-28) (noting that "AFS is the company contracted with Target to do the mechanical work on all of [RSS's] vehicles" and that "[w]hen drivers have issues with the yard trucks, the appropriate procedure is to submit a work order to Target and then Target will bring in AFS to fix the Unit 1"). That is not enough for Plaintiffs to "plausibly" establish a claim for damages against RSS.

"At most, the complaint alleges negligence and/or willful negligence." *Id.* at ¶ 20. And ultimately, that means Plaintiffs have "failed to state a claim upon which relief could be granted." *Id.* at ¶ 21.

On that basis, RSS' Motion for Judgment on the Pleadings, or, in the Alternative, Summary Judgment is **GRANTED**.[2] (ECF No. 10.)

### IV.     OBWC's Motion for Realignment

Separately, the OBWC moves this Court "for an Order realigning it as a named party plaintiff in this action." (ECF No. 5.) Its rationale for this is forthright: because the OBWC is only "a party to this case" as a "subrogee to Ms. Zimmerman's claims in tort against the named defendants," it contends that it and Plaintiffs have "similar interests." (*Id.*) This, the OBWC argues, means "realignment" is in the "best interest of the parties," as it would "avoid the risk of inconsistent adjudication and prejudice to the parties."

The OBWC's motion rests on shaky authority. As far as this Court can tell, "realignment" is typically considered by courts in this circuit in the context of consolidation or to preserve diversity jurisdiction. *See Cleveland Hous. Renewal Proj. v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559-60 (6th Cir. 2010); *Oro Capital Advisers*, No. 2:19-cv-5087, 2021 WL 5376650, at *7 (S.D. Ohio July 6, 2021) ("Sixth Circuit case law does not explicitly address whether courts may realign parties when issuing a consolidation.  Instead, most available realignment precedent centers on realigning the parties for diversity jurisdiction purposes.") Indeed, the OBWC fails to cite any federal case where a court re-labeled a nominal defendant as a plaintiff simply because it had a

---

[2] The Court notes that Plaintiffs, who are represented by counsel, have not asked for leave to amend their complaint. (ECF No. 18 at PageID #213-15.) And the Court is not exactly inclined to grant such leave on its own accord. *See Brown v. Matauszak*, 415 Fed. App'x 608, 616 (6th Cir. 2011) ("[A] a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought."). Were it to appear that "information . . . that would cure the defect in [Plaintiffs'] complaint" existed, the Court would likely strike a different tune. *See id.* But such information does not appear to exist here. That is because the genesis of Ms. Zimmerman's injury, as alleged, sounds almost entirely in negligence. No element of intentionality on RSS' behalf is apparent. Thus, the Court sees it as exceedingly unlikely that Plaintiffs, if granted leave to amend, would be able to withstand another Rule 12(b)(6) motion from RSS. *See Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991).

subrogation interest in the plaintiff's recovery. Nor, for that matter, does the OBWC sufficiently explain *how* its subrogation interest actually aligns its interests with Plaintiffs'. The OBWC's recently filed counterclaim *against* Plaintiffs—which seeks reimbursement from any damages they receive in this case—certainly suggests a degree of adversity between the parties. (*See* ECF No. 35.) That counterclaim also settles any "risk of inconsistent adjudication," given that it will invariably be resolved by this Court.

Thus, in the absence of any persuasive reason to realign the parties, the OBWC's Motion for Realignment is **DENIED**. (ECF No. 5.)

V. Conclusion

For the foregoing reasons, the Court **GRANTS** RSS' Motion for Judgment on the Pleadings, or, Alternatively, for Summary Judgment (ECF No. 10), **TERMINATES** RSS as a defendant in this case, and **DENIES** the OBWC's Motion for Realignment of the Parties (ECF No. 5).

This case shall remain open.

**IT IS SO ORDERED.**

**9/20/2022**　　　　　　　　　　　　　　　　s/Edmund A. Sargus, Jr.
**DATE**　　　　　　　　　　　　　　　　　　EDMUND A. SARGUS, JR.
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**